KOPRUCKI v. WOJCIECHOWSKI et al.

(Supreme Court, Equity Term, Erie County. July, 1911.)

1. MORTGAGES (§ 437*) — FORECLOSURE — NECESSARY PARTIES — CLAIMANT OF MORTGAGE.

The court, in a suit by an unincorporated association to foreclose a mortgage given it, properly refused to proceed till a corporation, having custody of the mortgage and secured bond, and claiming them as successor of the association, was brought in as a party.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 1290; Dec. Dig. § 437.*]

2. ASSOCIATIONS (§ 24*)—INCORPORATION—PASSING OF TITLE TO PROPERTY.

Whatever the meaning of the provision of the constitution of a national unincorporated association, that its administrative board (which was to be elected every two years at a national convention, and the location of which was to be changed to a different part of the country at least once every four years) shall take out a charter for the state in which it officiates in the same name as that of the association, a corporation having been organized under such name by the then administrative board in the state in which it was located, acceptance of the incorporation by a biennial convention, the legislative authority of the association thereafter held, was necessary to vest the corporation with title to the association's property.

[Ed. Note.—For other cases, see Associations, Cent. Dig. § 45; Dec. Dig. § 24.*]

Action to foreclose a mortgage by Peter Koprucki, as treasurer of the Polish Union of America (unincorporated), against Piotr Wójciechowski, the Polish Union of America (incorporated), and others. Judgment for plaintiff.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Frank S. Burzynski (Mr. Laing, of counsel), for plaintiff.
Leon J. Nowak (Mr. Killeen, of counsel), for defendants.

POUND, J.   On June 16, 1905, the defendants Wojciechowski borrowed $1,000 from the Polish Union of America, and to secure the indebtedness gave their bond secured by mortgage on real estate in Buffalo owned by them.   Payments have been made thereon so that the principal amount now due is $450.

This action is brought by the plaintiff, claiming that the Polish Union of America is an unincorporated association of more than seven persons, and that he is the treasurer thereof, for the purpose of foreclosing the mortgage.   The litigation, so far as the plaintiff and the defendant Polish Union of America (incorporated under the laws of the state of Pennsylvania) are concerned, will determine which organization is the owner of the bond and mortgage.

At the time of the making of the mortgage, and for years before, the Polish Union of America was an unincorporated association, a fraternal assessment order governed by the lodge and convention system.   Its constitution contained a provision for incorporation (as the defendants claim), and in the year 1903 an attempt was made by its officers to incorporate under the insurance laws of the state of New York; but they were unable to comply with the laws, and the incorporation was never completed and was abandoned.   In 1907, by certificate filed in the registrar's office of Luzerne county, Pa., a corporation was organized under the general corporation laws of that state under the corporate name "Polish Union of America," with its principal place of business at Wilkesbarre.   This was by the officers of the association then in office.

The plaintiff claims that the incorporation was not the act of the Union, and that the Union is still an unincorporated association and the owner of the assets of the Union.

Following the incorporation, all the property and assets of the association remained in the custody of the Wilkesbarre officers, this bond and mortgage with the rest; and the bond and mortgage are still in the custody of the corporation, which holds it under claim of title.

The constitution of the Polish Union provides for national conventions to be held every two years and for the election of an administrative board from some chosen locality; the location of such board to be changed, however, at least once in four years.   The administrative board has been so located from time to time in Minnesota, New Jersey, New York and Pennsylvania.   A convention was held in Buffalo in the year 1906 at which officers were elected, and the administrative board was located in Wilkesbarre, Pa., for the next two years.   Some of these officers, constituting the administrative board, were the officers who procured the incorporation.   It appears from the certificate of incorporation in evidence that the president of the Union also acted with the administrative board in effecting the incorporation.   The president is not a member of the administrative board.

In September, 1908, another convention of the organization was held at Chicago.   Trouble arose at this convention over the election of a

secretary. The right of certain delegates of a branch or group located at Buffalo to vote in the convention was questioned upon the ground that the group had not paid its dues to the general organization. A check for the dues was delivered to the officers of the convention, which check went to protest after the convention. The Buffalo candidate was elected secretary over the then incumbent by a majority of one vote. The administrative board was located in Buffalo for the next two years. Following the convention a claim was made by the Wilkesbarre board that the organization was incorporated under the laws of the state of Pennsylvania, and that its property and assets could not be lawfully taken out of the state. These two matters resulted in a split in the organization; the Buffalo board claiming to be the governing body of the Union, and the Wilkesbarre corporation refusing to recognize it as such. Each now claims to be the original Polish Union of America.

[1] The basic question is: Was the Polish Union of America which held its convention in Chicago in the year 1908 the unincorporated association or the corporation organized under the laws of Pennsylvania? I see no reason why that question should not be passed upon in this action. The question primarily is not as to the internal organization of either "Union," but rather as to which of two entirely distinct claimants is the owner of the mortgage in suit. That is the issue tendered by the pleadings and on the trial. The court properly refused to proceed with the case until the rival claimant was brought in. Mahr v. Norwich Union Fire Ins. Soc., 127 N. Y. 452, 28 N. E. 391. It is clear that, in either event, the action of the convention was the official action of the Union as it then existed, and that it vested the control of the Union in the administrative board to be located at Buffalo for the next two years. All was regular beyond question, except the election of the secretary, and the convention provided a method for settling that dispute and sought to settle it, as appears by the minutes, as follows:

"For secretary there were two candidates: secy. gen. J. Dembiec and J. Mikuszewski. J. Mikuszewski is elected gen. secy. of the Union who received 140 votes, whereas J. Dembiec 139.

"Dissatisfied ones from other states upon the election, that the Buffalonians are taking everything, are protesting the legality of the election of Mikuszewski because 5 votes of del. Pulkowski are illegal for the reason that his society, No. 75, for 60 days has not paid its dues. Shrieking and uproaring commences; overheating. Finally the matter was settled thus, that if in reality society No. 75 did not pay its required sum, then the election of the secretary will be illegal, and the matter will be settled by the two chairmen. * * *

"Del. Dr. Pitass praises the services of general secretary Dembiec for the Union. He sold his business in order that he may have more time for the organization, on account of which he was materially ruined. He recommends to the House, and in order to avoid law suits as to the legality of the election of the new secretary, to pay $400 a year or $800 for two years. The motion of Dr. Pitass is adopted.

"On motion of Del. Rozan the House names Dr. Dembiec as the organizer of the Union for the state of Pennsylvania.

"Next Del. Knoll moves that all actions of the Eighth Convention of the Union be declared valid and legal."

While this action might not be conclusive as between the rival claimants for secretary, no claim is made that the action of the Chicago convention was not in all other respects valid, corporation or no corporation.

The action of the Wilkesbarre board thereafter, in refusing to turn over the property of the Union to the Buffalo board and in attempting to fill the places of its members on the board, was therefore an unwarranted defiance of the whole body, acting in convention, of which the former was but an agent, except so far as it may be excused by some provision, not in evidence, of the Pennsylvania law governing fraternal orders incorporated in that state. But if the Pennsylvania corporation bearing that name was indeed the Polish Union of America which held the convention, and if it had succeeded as such to all the property rights of the unincorporated association, then it follows that plaintiff has no standing in court as the representative of the original unincorporated organization, and, as this tribunal has no question before it of the regularity of corporate action, the complaint must be dismissed.

[2] The Wilkesbarre board urges that it had the power and authority to incorporate the Union by virtue of article 12, § 2, of the constitution of the unincorporated association, which reads as follows:

"The administrative board shall take out a charter for the state in which it officiates in the name 'Polish Union of North America.' "

No other action of the Union as a body in convention, "the legislative authority" of the Union, is referred to as authorizing or confirming the incorporation. No official report of the incorporation was formally made to the convention of 1908, nor was the property of the Union ever turned over to the Pennsylvania corporation by action of the convention.

The meaning of section 2 of article 12, quoted supra, is not free from doubt. No charter was taken out by any administrative board either for itself or for the Union from the organization of the Union in 1890 down to 1907. The convention of 1908 was held, like the previous biennial conventions, in ignorance of the claim that the Union had been incorporated. At least the minutes bear no reference to this important change in the organization of the Union. If the Pennsylvania corporation became the owner of the property of the unincorporated association, it became so ipso facto of incorporation, and not with the knowledge or consent of the convention, so far as its official records show.

"As long as the (unincorporated) association continues in existence and with the purposes for which it was organized unfulfilled, its funds are impressed with a quasi trust, terminable only by unanimous consent of the members." 4 Cyc. 316.

To transfer the property of an unincorporated association to the same association, incorporated, requires the unanimous vote of the members present at a meeting duly called for that purpose, under New York Membership Corporations Law (L. 1909, c. 40 [Consol. Laws 1909, c. 35]) § 5. This statute is not referred to as controlling; but, by analogy, it suggests how important a step is the incorporation of an

unincorporated association and how carefully property rights are recognized and guarded.

Legislative charters, not municipal, cannot be forced upon persons without their consent. State ex rel. Wier v. Dawson, 16 Ind. 40.

The question of acceptance of charter seldom arises under general laws authorizing the formation of corporations; but an agency to incorporate and deliver the unincorporated association over bodily, membership and assets, to the corporation, will not be implied, nor will general words be broadly construed to uphold such action by the officers of the unincorporated association. The direction of the constitution must be clear and express.

I am of opinion that, whatever meaning may be attached to article 12, § 2, acceptance of the Pennsylvania incorporation by the Chicago convention was essential to vest the corporation with title to the property of the unincorporated association; that the unincorporated association could not be deprived of its property by the act of its officers in incorporating the Union, under the vague, general power granted to them by the constitution; that the unincorporated association held the convention of 1908, still exists independently of the Pennsylvania corporation, and owns the bond and mortgage in suit; and that the Pennsylvania corporation is now a seceder from the parent organization and has no right, title, or interest in the bond and mortgage.

Judgment accordingly.